**In re Glen C. CORKE, Debtor/Appellee.**

**Nos. 92–4287–SAC, 93–4023–SAC.**
**Bankruptcy No. 93–41233–13.**

United States District Court,
D. Kansas.

Nov. 17, 1993.

Pantaleon Florez, Jr., Florez & Frost, P.A., Topeka, KS, for Glenn C. Corke.

Eric Kjorlie, Topeka, KS, for Joann Corke.

William H. Griffin, Topeka, KS, for William H. Griffin.

## MEMORANDUM AND ORDER

CROW, District Judge.

These consolidated bankruptcy appeals arise from the bankruptcy court's decisions in favor of the debtor, Glenn C. Corke, concerning a dispute over the nature of an agreement between the debtor and his ex-wife, Jo Ann Corke. On November 19, 1992, Jo Ann Corke and her attorney failed to appear at a hearing scheduled to consider her objection to Glen Corke's Chapter 13 plan. The bankruptcy court concluded, having found that Jo Ann Corke had waived her objections to the Chapter 13 plan by her non-appearance, that the agreement between the parties following their divorce was in the nature of a property settlement and not maintenance, and was therefore dischargeable under the bankruptcy code. The bankruptcy court's decision was based solely upon the evidence produced by Glen Corke at the November 19, 1992, hearing. Jo Ann Corke's subsequent motions to set aside that decision by the bankruptcy court were each denied and she appeals the decisions by the bankruptcy court denying her relief from its November 19, 1992, decision.

### Factual Chronology

To understand the nature of these consolidated cases, the court has constructed a chronology of relevant events.[1] The dates relating to orders entered by the bankruptcy court generally refer to the date that the order was entered on the docket. *See In re American Freight System, Inc.*, 158 B.R. 225 (D.Kan.1993) (a judgment is not effective un-

---

1. The court notes that neither party has made an effort to key their discussion of the relevant facts to the documents which appear in the file in any meaningful manner. The court has constructed this chronology by reviewing each document which appears in the court file. While this would normally not be a particularly onerous task, the documents in the court file are not arranged in a chronological order. Moreover, it should not be the court's burden to scour the entire record for certain documents which only appear as attachments to other documents. In the future, the court suggests that each party attempt to avoid similar problems.

til it is entered on the docket as required by Bankruptcy Rule 5003).

June 26, 1992 Glenn C. Corke files his Chapter 13 Voluntary Petition

August 14, 1992 Jo Ann Corke timely files her proof of claim; on the proof of claim, Jo Ann Corke states that her claim is based upon "Non-dischargeable alimony & property judgment lien." In short, Jo Ann Corke contends that her claims are not dischargeable under 11 U.S.C. § 523(a)(5) and that her claims are improperly classified as unsecured when they are in fact secured. Both of Jo Ann Corke's claims arise out of a divorce proceeding and Property Settlement Agreement ordered by the District Court of Shawnee County, Kansas, *In re Corke,* Case No. 90–D–867.

August 26, 1992 Trustee in bankruptcy files a motion to dismiss case for default against Glen C. Corke for non-payment under the Chapter 13 Plan filed August 5, 1992.

September 23, 1992 Bankruptcy court holds a pretrial conference at which the parties appear. The minute sheet to the hearing indicates that if the case is not dismissed, debtor's counsel should file a brief within 15 days distinguishing the bankruptcy court's decision in *"Sanderfoot;"* Jo Ann Corke's attorney was to respond. If the case is not dismissed pursuant to the Trustee's August 26, 1992, motion to dismiss, the parties are prepared for a hearing which will take two hours or less on the issue of whether the $20,697 awarded Jo Ann Corke was a property settlement or maintenance. The last line on the minute sheet states "SET THIS FOR A TWO HOUR HEARING."

September 29, 1992 Trustee's Motion to Dismiss Case for Default continued to October 27, 1992.

October 7, 1992 Bankruptcy court ordered and noticed specially set for hearing on

November 19, 1992, to consider and act on Jo Ann Corke's objection to the plan confirmation. The Notice also states:

*IF PARTIES ANTICIPATE THAT THE HEARING MAY EXTEND IN EXCESS OF 15 MINUTES, OR THAT AN EVIDENTIARY HEARING MAY BE REQUIRED, COUNSEL MUST SEEK A SPECIAL SETTING DATE FROM THE CLERK. SUCH A REQUEST MUST BE MADE IN WRITING AND MUST INDICATE THE ANTICIPATED LENGTH OF TIME NEEDED FOR HEARING.*

October 27, 1992 Trustee's Motion to Dismiss Case for Default continued to December 16, 1992. A notice is sent to the parties indicating that a hearing on the Trustee's motion will be held on December 16, 1992.

November 3, 1992 Bankruptcy court grants Glen Corke's motion to extend time to submit order or file brief.

November 10, 1992 At some point after receiving this notice, Jo Ann Corke alleges that she called the bankruptcy court clerk's office to determine whether the Trustee's motion to dismiss was still pending. According to Jo Ann Corke, the bankruptcy clerk's office advised her that there would not be a hearing on November 19, 1992, as the case had been dismissed.

Jo Ann Corke leaves a message at her attorney's office indicating that there was "no meeting on 11/19/92."

November 17, 1992 Bankruptcy court enters an order denying Trustee's motion to dismiss.[2]

November 19, 1992 Bankruptcy court holds hearing on Jo Ann Corke's objection to debtor's proposed plan. In light of the fact that Jo Ann Corke nor her attorney, Eric Kjorlie, has appeared at the appointed time, the bankruptcy court contacts Kjorlie's office. Kjorlie's office indicates that he is not at his office and

2. On November 19, 1992, Jo Ann Corke's attorney was participating in a civil injunction hearing in Brown County District Court in an apparently unrelated matter. Counsel for Jo Ann Corke received a copy of the bankruptcy court's order denying the Trustee's motion on November 19, 1992, and did not become aware of that order until he returned to his office in the late afternoon of that day.

that Kjorlie does not intend to attend the bankruptcy court's hearing. On the record, the bankruptcy court states that "I would presume that they [Jo Ann Corke and her counsel] have withdrawn or waived their objection."

Glenn C. Corke testifies at the hearing, essentially stating that his settlement with his ex-wife was a property settlement and was not intended to be alimony or maintenance.

The bankruptcy court finds that the agreement between Glen C. Corke and his ex-wife Jo Ann Corke which divides in half the amount of Glen C. Corke's retirement benefits, less certain credits, is a property settlement, not an agreement to pay maintenance or alimony.

November 20, 1992   Jo Ann Corke files a motion to reconsider the bankruptcy court's ruling at the November 19, 1992, hearing. Jo Ann Corke also requests a one hour evidentiary hearing on her objection to confirmation.

December 8, 1992   Bankruptcy court denies Jo Ann Corke's November 20, 1992, motion to reconsider.

December 16, 1992   Glenn C. Corke's Chapter 13 plan confirmed upon amended budget filed.

December 17, 1992   Jo Ann Corke files a "Rule 55" and "Rule 60(b)" motion to reconsider the December 8, 1992, order denying her November 20, 1992, motion to set aside.

December 18, 1992   Jo Ann Corke files a notice of appeal from bankruptcy court's December 8, 1993, order denying her November 20, 1992, motion to reconsider.

January 25, 1993   Bankruptcy court enters an order treating Jo Ann Corke's December 17, 1992, motion as a motion pursuant to Federal Rule of Bankruptcy Procedure 9024, which incorporates Fed.

R.Civ.P. 60(b) (subject to exceptions not relevant here). After noting that a notice of appeal generally ends the bankruptcy court's jurisdiction, the bankruptcy court concludes that it retains jurisdiction to deny a motion made pursuant to Fed.R.Civ.P. 60(b).

The bankruptcy court denies Jo Ann Corke's December 17, 1992, motion to reconsider. In pertinent part, the order states:

> The motion raises no points significantly different than the previously denied motion to reconsider. The fact remains that although a motion to dismiss the main bankruptcy case was pending at the time this adversary proceeding was noticed for trial, that motion was denied by an order filed two days before the trial date. No order of dismissal has yet been entered in the main case, and the parties to this proceeding should have appeared at the appointed time, ready for trial, as the debtor and his counsel did. Ms. Corke's motion is hereby denied.

February 1, 1993   Jo Ann Corke filed a notice of appeal from the bankruptcy court's January 25, 1993, order.

May 27, 1993   District court grants Jo Ann Corke's motion to consolidate Case Nos. 92–4287–SAC and 93–4023–SAC.

With this chronology of events constructed and having considered the briefs of counsel, the decisions of the bankruptcy court, and the applicable law, the court is now prepared to rule.

Both parties appear to agree that the Supreme Court's recent 5–4 decision in *Pioneer Investment Services v. Brunswick Associates*, —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), decided after the bankruptcy court's decisions in the case at bar, should be considered in evaluating the bankruptcy court's decisions in this appeal.[3]

---

**3.** Although not discussed by the parties, the court understands that other courts and commentators have questioned the precedential value of the Supreme Court's 5–4 decision in *Pioneer Investment* in contexts outside of Chapter 11 cases. For that matter, the Tenth Circuit has noted that "excusable neglect" is not a basis for extending

the deadline for filing proofs of claims in Chapter 7, 12 or 13 cases, as the deadline for filing claims in those Chapters is found in Bankruptcy Rule 3002. *See Jones v. Arross*, 9 F.3d 79 (10th Cir. 1993). Nevertheless, the court is persuaded that it is appropriate in this case to consider the

Based upon her reading of *Pioneer Investment,* Jo Ann Corke contends that this court should reverse the bankruptcy court's decision outright and remand this case to be decided upon the merits. In contrast, while Glen Corke concedes that *Pioneer Investment* is relevant for purposes of evaluating the bankruptcy court's ruling on Jo Ann Corke's Rule 60(b) motion, he argues that Jo Ann Corke cannot demonstrate that her failure to appear was the result of excusable neglect under the factors articulated by the Supreme Court in *Pioneer Investment.*

In *Pioneer Investment,* the Supreme Court considered the issue of whether an attorney's inadvertent failure to file a proof of claim in a Chapter 11 case within the deadline set by the court can constitute "excusable neglect" within the meaning of Rule 9006(b).[4] The Court first defined the term neglect:

> The ordinary meaning of "neglect" is "to give little attention or respect" to a matter, or closer to the point of our purposes, "to leave undone or unattended to *esp[ecially] through carelessness.*"

*Id.* at 85, (*quoting Webster's Ninth New Collegiate Dictionary* 791 (1983)). The Court then attempted to determine the meaning of "excusable":

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include, as the Court of Appeals found, the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, in-

cluding whether it was within the reasonable control of the movant, and whether the movant acted in good faith. (footnotes omitted).

—— U.S. at ——, 113 S.Ct. at 1498, 123 L.Ed.2d at 89–90 (*citing In re Pioneer Investment Services Co.,* 943 F.2d 673, 677 (6th Cir.1991)). The Supreme Court also made clear that parties, having chosen an attorney as their representative, are to be held accountable for the acts or omissions of their attorney. —— U.S. at ——, 113 S.Ct. at 1499, 123 L.Ed.2d at 90–91.

The bankruptcy court in this case denied Jo Ann Corke's "motion to set-aside" and her subsequent Rule 60(b) motion based upon its finding that the reasons articulated for failing to appear at the November 19, 1992, hearing did not constitute excusable neglect. Although Glenn Corke argues that the bankruptcy court, in essence, adequately considered all of the factors discussed in *Pioneer Investment* for evaluating a party's claim of excusable neglect, this court is not convinced that the bankruptcy court, expressly or otherwise, considered all of those factors in evaluating Jo Ann Corke's motions.

Nor is the court persuaded that remanding this case to the bankruptcy court to evaluate Jo Ann Corke's claims of excusable neglect in light of the Supreme Court's decision in *Pioneer Investment* is a pointless waste of the court's resources. Although Glenn Corke's brief makes several salient arguments undermining Jo Ann Corke's claims of excusable neglect, reconsideration of *all* of the facts and circumstances in light of the Supreme Court's discussion of *Pioneer Investment* could conceivably compel a different result.

---

meaning of the phrase "excusable neglect" in light of the Supreme Court's latest discussion of the phrase. *See In re Cruey,* 158 B.R. 66, 70 (Bankr.W.D.Va.1993) ("Although *Pioneer Investment* was decided in the context of whether the Court would accept a late filing of a claim in a Chapter 11 proceeding pursuant to Bankruptcy Rule 9006(b)(1), the Court's explanation of excusable neglect is not limited to that rule.").

**4.** The court of appeals had divided on the proper analysis for determining excusable neglect under Rule 9006(b). Four circuits had taken a narrow

view of excusable neglect, requiring a showing that the delay was caused by circumstances beyond the movant's control. *Pioneer Investment,* —— U.S. at ——, 113 S.Ct. at 1494, 123 L.Ed.2d at 84 n. 4. In contrast, the Tenth Circuit had applied a more "flexible analysis," evaluating the movant's claim under in light of several factors. *Id., see In re Centric Corp.,* 901 F.2d 1514, 1517–1518 (10th Cir.), *cert. denied sub nom, Trustees of Centennial State Carpenters Pension Trust Fund v. Centric Corp.,* 498 U.S. 852, 111 S.Ct. 145, 112 L.Ed.2d 112 (1990).

While Jo Ann Corke's attorney could obviously have made a more probing inquiry as to whether the November 19, 1992, hearing was going to be held, the October 27, 1992, notice that a hearing was going to be held on December 16, 1992, to consider the Trustee's motion to dismiss could possibly have served as a point of confusion as the need for a hearing on Jo Ann Corke's claim would have been obviated had the Trustee's motion to dismiss been granted. Moreover, Jo Ann Corke claims that she was informed by someone in the bankruptcy court's clerk's office that the November 19, 1992, hearing was cancelled. In addition, some of the factors articulated by the Supreme Court in *Pioneer Investment* for evaluating excusable neglect may weigh in Jo Ann Corke's favor.

■ In this same vein, Glenn Corke also argues that even if the bankruptcy court were to find excusable neglect and were to hold a hearing concerning Jo Ann Corke's claim, she would not prevail. Specifically, Glenn Corke argues that even if Jo Ann Corke were able to demonstrate at a hearing that the parties treated the monthly payments as alimony/income on their respective income tax forms, this would only be one factor in evaluating the nature of the agreement between the parties, and that factor could not outweigh the other facts indicating that the agreement between the parties was a property agreement.

This court does not believe that the manner in which the parties have treated the monthly payments on their income tax forms is wholly irrelevant to the issue of whether or not the monthly payments are in the nature of maintenance or a property settlement. *See In re Manning*, 149 B.R. 388, 391 (Bankr.E.D.Va.1992) ("Evidence at trial established that defendant has included all the disputed payments in her income tax returns and that debtor in his own returns has claimed them as deductible alimony. This is further persuasive evidence of the parties' intent to treat debtor's obligations as spousal support."). While the treatment of the monthly payments by a party on their income tax forms may only be a factor in determining the nature of the parties' agreement, the fact that a party has sworn under oath (in signing their income tax form) that the monthly payments were actually alimony, and then takes a contrary position in bankruptcy for their own personal benefit, might persuade the trier of fact to view the agreement between the parties in a different light.

Conversely, Jo Ann Corke's claim of excusable neglect is not grounded upon such solid footing as to compel an outright reversal of the bankruptcy court. As the bankruptcy court's decisions indicate, Jo Ann Corke's failure to appear as scheduled was based in large part upon a failure to make proper inquiry regarding the November 19, 1992, hearing. On remand, the bankruptcy court may conclude that based upon all of the facts and circumstances of this case that her failure to appear did not constitute excusable neglect. Moreover, as this court sits as an appellate court, it is clearly appropriate for the bankruptcy court in the first instance to evaluate Jo Ann Corke's claims of excusable neglect.

In remanding this case to the bankruptcy court for reevaluation of Jo Ann Corke's claims of excusable neglect the court in no way intimates how this court would decide this case or how the bankruptcy court should decide this case on remand. The court simply finds that it is appropriate to remand this case to the bankruptcy court to reconsider Jo Ann Corke's claims of excusable neglect in light of the Supreme Court's decision in *Pioneer Investment*.

IT IS THEREFORE ORDERED that the bankruptcy court's finding that Jo Ann Corke's failure to appear at the November 19, 1992, hearing was not based upon excusable neglect is reversed and this case is remanded to the bankruptcy court to reevaluate Jo Ann Corke's excusable neglect claims in light of the Supreme Court's decision in *Pioneer Investment*.